FREEDOM OIL WORKS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CRAIG OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9707, 17882, 20128, 9706, 20230.
Promulgated December 23, 1927.

*Kenneth Parkinson, Esq.*, and *J. K. Hulse, C. P. A.*, for the petitioners.

*A. R. Marrs, Esq.*, for the respondent.

OPINION.

PHILLIPS: Several errors alleged in the petitions were abandoned at the hearing. As to certain others, the respondent admitted error. It is urged that the Commissioner erred in his determination of the March 1, 1913, value of the refining plant and equipment of the Freedom Oil Works Co. for the purpose of computing depreciation. Prior to 1910 this plant at Freedom, Pa., was equipped to properly refine about 18,000 barrels of crude oil per month. Its buildings were mostly of frame construction. During 1910, 1911, and 1912 the plant was reconstructed and enlarged to a capacity of 1,000 barrels per day. The frame buildings were destroyed and brick and concrete buildings erected. Substantially all of the old equipment was retained and new equipment was installed. The books of the company show the March 1, 1913, depreciated cost as $210,- 691.42, and in computing depreciation this was used by the Commissioner as the value of the plant on that date. In this amount is included only $20,000 for the equipment in use prior to 1910, which equipment was sufficient to care for two-thirds of the capacity of the plant as reconstructed. It is obvious that this figure greatly understated the value of this older equipment. Moreover, it appears that some of the labor entering into the reconstruction was not charged to construction but was written off as an expense. It is evident from the testimony that on March 1, 1913, the Freedom plant was equipped

to operate efficiently and was completely equipped to utilize the crude oil to best advantage. The petitioner has produced much opinion evidence as to its value on the basic date, some of which is entitled to little, if any, weight and some of which appears entitled to full credence. No witnesses as to value were produced by the Commissioner. Reviewing all of the testimony, we reach the conclusion that the refining plant of the petitioner had a value of $400,000 on March 1, 1913, exclusive of any value which may attach to the land. The parties have stipulated the cost of subsequent additions and have agreed that the composite rate of 7½ per cent per annum used by the Commissioner in determining depreciation was proper. The amount allowed as a deduction for depreciation should be recomputed accordingly.

The Freedom Oil Works Co. also questioned the March 1, 1913, value used by the Commissioner in determining depreciation on its branch station properties. The evidence as to such value is most unsatisfactory and forms no basis on which we might disturb the Commissioner's determination of value. Apparently this is recognized by counsel for petitioner, for in their brief they accept the Commissioner's determination except as applied to two stations sold during the year and concerning the March 1, 1913, value of which there is competent testimony. The cost of additions made subsequent to March 1, 1913, is stipulated and both parties agree that the rate used by the Commissioner in computing depreciation was correct.

It appears that in 1919 the Freedom Oil Works Co. sold three of its branch stations, two of which were owned on March 1, 1913. The parties can not agree as to the fair market value of these stations on that date, to be used as a basis for computing petitioner's profit from the sale. We have found such value from the evidence submitted. The parties are agreed as to the cost of all these properties and as to the cost of subsequent additions thereto; also that the rate of 10 per cent for station properties and 33⅓ per cent for automobile trucks, used by the Commissioner in computing depreciation, is reasonable.

It is admitted that in computing the depreciation allowable in 1918 to the Freedom Oil Works Co. upon its automobiles, the Commissioner determined the cost of such assets as of the beginning of the year to be $36,029.12, whereas such automobiles cost $56,329.12 and that the depreciation allowance should be computed accordingly. The parties are agreed that the rate used by the Commissioner was correct.

It is also admitted that in computing depreciation for such year the Commissioner made no allowance for changes occurring during the year. It is stipulated that there was an addition to automobile account of $48,241.79 and reductions as follows: tank cars, $1,198.05;

station property, $1,026.63; teams and wagons, $1,026.63 and that adjustments should be made accordingly, using one-half of the same rates fixed by the Commissioner for annual depreciation on each class of assets.

It is further stipulated that during 1918 the Freedom Oil Works Co. paid for repairs and rental of tank cars $6,135.91, which amount was not allowed as a deduction by the Commissioner, but which should be allowed.

█ With respect to the Craig Oil Co. the principal issue is the March 1, 1913, value of its refinery. Here again we are dependent upon opinion evidence produced by the petitioner which is not impeached or successfully attacked on cross-examination or contradicted by any evidence produced by the respondent. The value has been fixed upon the basis of such testimony.

It should be noted that while the crude-oil capacity of this plant was in excess of that of the Freedom Oil Works Co., this oil was not subject to such complete refining as that handled by the latter company, consequently the plant was not nearly so complete.

█ The two petitioners claim that they are entitled to have their profits tax for 1918 computed under the provisions of section 328 of the Revenue Act of 1918. Two grounds are urged: (1) That because of the family relationships involved in the stock holdings, three of the stockholders who were the presidents and vice presidents of these companies and who devoted their entire time to the management, drew salaries of only $6,000 each; and (2) that since the plant of the Freedom Company was carried on the books at less than its cost, the cost can not be determined for invested capital purposes. The first ground is clearly insufficient in the absence of any showing of what was a reasonable salary to these three officers and that the salary paid was so small as to abnormally affect the income. So far as the second ground is concerned, it is sufficient to point out that we are without any information as to the basis upon which the Commissioner computed invested capital or what he included as the cost of the plant. So far as we know, he may have gone back to the original cost of the plant and by recomputing depreciation allowed a proper valuation in invested capital. One of the errors alleged in the petition but waived at the hearing would lend credence to such a thought. We should not be asked to guess that he took book figures and then asked to base a decision upon such a guess.

█ Petitioner contends that while no deficiency has been determined against the Craig Oil Co. for 1917, the deficiency of the Freedom Oil Works Co. for that year can not be determined without also considering the income of the Craig Oil Co. The position appears to be well taken and, in computing the deficiency due from the Free-

dom Oil Works Co. for that year, the income of the Craig Oil Co. should be recomputed upon the basis of the findings made above.

*Decision will be entered on 20 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and VAN FOSSAN.